## THE UNITED STATES *vs.* FRANK C. BERTELMANN.

### January 25, 1906.

*Practice—General and Specific Exceptions to Charge to Jury:* Rule 4 of the Supreme Court of the United States and Rule 10 of the Circuit Court of Appeals, 9th Circuit, denying the validity of a general exception to a charge to a jury and requiring specific exceptions to the several matters of law objected to, although applying to the allowance of bills of exceptions, yet they are important in any case, that the presiding judge may then and there consider them and give new and different instructions if he should deem it proper to do so.

*Same—Cross-examination:* The defendant introduced evidence to show that interviews with witnesses tending to show a false assumption of authority by him as an official or employe of the United States, and that as such he obtained money from them, were limited to conversations relative to the work of canvassing for names and advertisements for a directory, and the prosecution was permitted in the cross-examination, against the defendant's objections, to ask questions as to defendant's dealings with other persons in regard to his alleged directory enterprise. *Held,* that such cross-examination was allowable.

*Construction of Statute:* Under the statute against the false assumption of authority as an officer or employe of the United States, and obtaining a thing of value as such, the false assumption of being a policeman of the United States is within the statute.

*Same:* Under such statute it is sufficient if defendant is shown to have falsely assumed to be an employe of the United States and as such obtained money from another, the object of the statute being to prevent the false assumption of official or government authority and thereby fraudulently to obtain a valuable thing from another.

*Testimony—Admissibility of:* Testimony was introduced by the prosecution that defendant said to witness, "I come America, Washington, Government House policeman," and "I come Washington Government America." *Held,* sufficient to go to the jury on the question whether he assumed to be acting under the authority of the Government of the United States.

*Jury—Drawing Talesmen in Open Court—Authority:* The clerk in open court drew the names of talesmen from the jury box. This was objected to as without the order of the court and as therefore illegal. *Held;* that such drawing was under the authority of the court.

*Court Interpreter—Requirements as to Citizenship:* Court interpreter need not be a citizen of the United States.

*Same—Question of Disqualification of:* Court interpreter who had assisted in the prosecution of previous cases against defendant and had assisted in working up the present case, not disqualified in the judgment of the court in view of its confidence in him.

*Error—Absence of Defendant when Demurrer and Motion to Quash were Overruled:* The court overruled a demurrer and motion to quash the indictment during the absence of defendant from the court room,—his counsel being present. *Held,* not error.

*Same—Use by Counsel of Unfavorable Remarks to the Opposite Side Pending Trial:* The occasional use by the prosecuting attorney of such words as "pretence and sham, and a scheme", referring to defendant's theory of defense on the ground of his alleged directory enterprise, without reproof by the court, not error in view of the evidence.

Criminal Law: Motion for New Trial.

J. J. Dunne, Ass't. U. S. District Attorney, for Plaintiff.
Henry Hogan, Attorney for Defendant.

DOLE, J. At the close of the charge to the jury, counsel for the defendant made the following exceptions orally, which were taken down by the reporter:

"We save an exception first to the last part of your Honor's "charge, where your Honor discusses the evidence in this mat- "ter of rebuttal, and take a general exception to all the in- "structions which your Honor handed to me, and to the re- "fusal of your Honor to give certain instructions handed him "by the defendant. I desire to make them at this time without "taking an individual objection to each instruction."

Thereafter, on another day, a motion for a new trial was made by counsel for the defendant orally and taken down by the reporter, as follows:

"Now, if your Honor please, we move for a new trial in this "cause, and in this case and in this matter, because the Court. "erred in not granting defendant's motion to quash the indict- "ment.

"1. Because the Court erred in not granting defendant's "motion to quash the indictment in this cause.

"2. Because the Court erred in not sustaining the defend- "ant's demurrer to the indictment found, or supposed to have "been found, by a jury of the United States of America.

"3. Because the defendant was not present in Court when "his motion to quash the indictment and demurrer was over-

"ruled, and was thereby denied his constitutional right to be "present during every stage of the cause.

· "4. Because the Court erred in not granting defendant's "motion to require the prosecution to elect upon which ground "of the indictment the prosecution would proceed, and there- "upon ask a verdict on.

"5. Because the jury that tried this case and rendered this "verdict upon which your Honor is to pass judgment, was not a "legally drawn and constituted jury in this:

"First. That the Court, after the exhaustion of the regu- "lar panel, and before the completion of a jury to try this cause, "notwithstanding the objection of the defendant and his coun- "sel, ordered the issuance of a special venire for more than one "talesman at a time, to-wit, for twenty-five talesmen, and which "special venire was issued and served and made thereupon ac- "tive, and which order was contrary to law.

"Second. That the Court, after exhausting the panel re- "turned by said special venire, and before the completion of the "jury to try said cause, and against the objection of defendant "and his counsel, ordered the issuance of a second special venire "for more than one talesman at a time, to-wit, for twelve tales- "men, which said special venire was issued, served, returned "and acted upon within this Court as against the rights of this "defendant. That the Court in ordering the United States "Deputy Marshal to serve said special venires left and placed "in the said United States Deputy Marshal's hands the absolute "discretionary power to serve whomsoever he pleased.

"That the Clerk of said Court, after depositing the names "of the talesmen in the jury box, and doing so as against the "objection of the defendant and his counsel, proceeded to draw "and did draw from said jury box the name of each talesman so "served, to serve on said jury, and that without the order of "Court; and thereby exercised a judicial function that he was "not authorized by law to exercise.

"That the defendant had used all his peremptory challenges.

"6. Because the prosecuting attorney during the progress

"of said cause used improper and prejudicial remarks against "the defendant, and on several occasions referred to the de-"fendant's directory and business as a 'pretence and sham, and "a scheme.'

"7. Because during the progress of said cause the Court, "over the objection of defendant's counsel, permitted the prose-"cuting attorney to ask the defendant in cross-examination the "names and dealings that the defendant had had relative to his "directory business, with persons other than Matsuoka and "Uyehiro, and that said cross-examination was not based on "anything brought out on the direct examination of the defend-"ant, and was therefore prejudicial error.

"8. That the defendant's counsel objected to Mr. Shiozawa, "the official Japanese interpreter of said Court, acting as such "interpreter in said cause, on these grounds following, to-wit:

"First. Because the said Shiozawa was not a qualified "official interpreter in this, that he was not a citizen of the "United States of America, and therefore could not take an "oath to support the Constitution and laws of the United States "of America as required by law, and that hence the intelli-"gence going to the Court through this interpreter came through "a wrong channel.

"Second. Because the said Shiozawa was prejudiced and "biased as against the said defendant or defense, for the reason "that he had assisted in the prosecution of cases against this "said defendant before. That the defendant's counsel and the "defendant requested that he be permitted to question the said "interpreter regarding his qualifications to act as such, but he "was overruled.

"9. That this Court erred in overruling the defendant's "motion for a directed verdict of acquittal, which motion was "based upon the following grounds:

"Because it has not been proven that this defendant falsely "assumed and pretended to be any officer or employe of the "Government of the United States.

24—U. S. D.

"Because there is no such officer or employe of the Govern-
"ment of the United States as a 'Policeman.'

"Because it has not been proven that this defendant falsely
"pretended to do any act that would or does fall within the
"province of any officer of the Government of the United States.

"Because it has not been proven that this defendant falsely
"pretended that he came from the Government at Washington,
"District of Columbia, or from the Government of the State or
"Territory of Washington, or from the County of Washington,
"in the State of Maine.

"Because it has not been proven that this defendant was not
"an officer or employe of the Government of the United States.

"Because the Court committed prejudicial error in the in-
"structions to the jury.

"Because the Court refused to give defendant's instruction
"number twelve.

"Because it has not been proven that Matsuoka and Uyehiro
"believed the alleged false assumption and pretence of this de-
"fendant that he was an officer and employe acting under the
"authority of the Government of the United States."

The Assistant U. S. Attorney quotes Rule 4 of the Supreme
Court of the United States and Rule 10 of the Circuit Court
of Appeals of the Ninth Circuit as denying validity to a general
exception to a charge to a jury.    These rules apply rather to
a bill of exceptions than to a motion for a new trial; yet they
are important in any case for "one object of an exception is to
"call the attention of the circuit judge to the precise point as
"to which it is supposed it has erred, that he may then and
"there consider it and give new and different instructions to
"the jury, if in his judgment it should be proper to do so."
*Beaver v. Taylor,* 93 U. S., 46, 55.    In the case before the
Court exceptions are not even specified in the motion for a new
trial, but a general objection is made to the "instructions to
the jury" and that the "court refused to give defendant's in-
"struction number twelve."    This instruction is not set forth
and I am not informed as to its tenor.    Under these circum-

stances, although defendant's counsel incorporates a statement of exceptions to the instructions in his brief, I do not think that part of his case is before the court in a shape to call for consideration. I will, however, consider later the second point under the ninth ground of the motion, and the objections stated in the brief to the instructions given on this point.

The first, second, fourth, fifth, seventh, eighth and ninth grounds of the motion, except the last three paragraphs of the latter, were made during the pendency of the proceedings in open court and overruled by the court, and will not be reconsidered except on the following points:

As to the seventh ground, the defense introduced into the case testimony tending to show that the defendant was engaged in a scheme of publishing a directory of the Hawaiian Islands and in canvassing the Islands for names and advertisements for such directory, and that his interviews with the witnesses Matsuoka and Uyehiro, were solely in connection with such enterprise. Upon cross-examination, the prosecution was permitted, against the objection of defendant's counsel, to go generally into the subject of such enterprise and to ask the defendant as to his dealings with other persons than such two witnesses relative to the said alleged directory business. The court considered that such questions were proper cross-examination in view of the testimony on the direct examination given by the defendant as to his taking up and pushing such enterprise, and I still consider that such allowance was correct and overrule this point.

The second point under the ninth ground is as follows:

"Because there is no such officer or employe of the Government of the United States as a 'Policeman'."

The court instructed the jury on this point as follows:

"I instruct you that while there may be no such officer or employe of the Government of the United States as a 'police-man', yet Marshals and Deputy Marshals are among the officers and employes of the United States and the word 'policeman' is sufficiently within the meaning of the words Marshal

"or Deputy Marshal to bring the case within the statute if you
"believe that he falsely assumed to be a policeman of the United
"States Government."

Defendant's counsel, in his brief, claims that this instruction
was prejudicial error in that it is in conflict with and contrary
to defendant's instruction Number 3, which was given by the
court to the jury and was therefore misleading. That instruc-
tion was as follows:

"I further instruct you that the statute in this case being
"highly penal it must be strictly construed; that you can take
"nothing by intendment or implication; that there can be no
"constructive offense; and that before this defendant can be
"punished his case must be plainly and unmistakably within
"the statute."

I hold to the correctness of both of these instructions and
do not find them conflicting. In any case, it is sufficient in
my view if the defendant was shown by the evidence to have
falsely assumed to be an employe of the Government of the
United States and in such pretended character demanded of or
obtained from the prosecuting witnesses any valuable thing.
The court instructed the jury further on this point as follows:

"The essential aim of the statute is to prevent the false as-
"sumption of official or government authority and thereby to
"fraudulently obtain a thing of value from another; and if you
"find beyond a reasonable doubt, that the defendant has, by such
"false assumption, obtained money from either Matsuoka or
"Uyehiro you should find him guilty upon one or both counts
"according as you find in relation to the counts."

The fourth point under the ninth ground of the motion is as
follows:

"Because it has not been proven that this defendant falsely
"pretended that he came from the Government at Washington,
"District of Columbia, or from the Government of the State
"or Territory of Washington, or from the County of Washing-
"ton in the State of Maine."

This point is overruled, the evidence showing that the de-

fendant said as interpreted that he was "policeman from United States Government, Washington," and as given in broken English by the two witnesses Uyehiro and Matsuoka, "I come America, Washington, Government House policeman" and "I come Washington Government America." Under this testimony the jury had the right to conclude that the Government of the United States was meant.

The third paragraph under the fifth ground of the motion is as follows:

"That the Clerk of said Court, after depositing the names "of the talesmen in the jury box, and doing so as against the "objection of the defendant and his counsel, proceeded to draw "and did draw from said jury box the name of each talesman so "served, to serve on said jury, and that without the order of "Court; and thereby exercised a judicial function that he was "not authorized by law to exercise."

As a matter of fact, the clerk proceeded to draw such names in the presence of and with the approval and expectation of the judge and under such circumstances, whether the judge actually ordered him to do so or not is not a matter of importance as such drawing was substantially under the authority of the court. This point is therefore overruled.

In the eighth ground, the court interpreter, Mr. Shiozawa, was objected to by defendant's counsel "Because the said Shio-"zawa was not a qualified official interpreter in this, that he "was not a citizen of the United States of America, and there-"fore could not take an oath to support the Constitution and "laws of the United States of America as required by law, and "that hence the intelligence going to the Court through this "interpreter came through a wrong channel."

This person acting as court interpreter, did not thereby become an official of the Government of the United States. No law has been shown by defendant's counsel that such an employe of a federal court is required to take an oath to support the Constitution and laws of the United States, or to be a citizen, and I am unable to find any such law. In matters of inter-

preting evidence in federal courts, especially in this Territory, there are few men qualified to interpret from Japanese into English and from English into Japanese, and if the court was limited to citizens of the United States it might and probably would be seriously inconvenienced by such requirement.

He was also objected to "Because the said Shiozawa was "prejudiced and biased as against the said defendant or defense, "for the reason that he had assisted in the prosecution of cases "against this said defendant before.    That the defendant's "counsel and the defendant requested that he be permitted to "question the said interpreter regarding his qualifications to "act as such, but he was overruled."    This objection was amplified in the brief of defendant's counsel, as follows: "Because "he was prejudiced and biased against defendant for the reason "that he had assisted in working up the case against defendant "for which he was then on trial."

Defendant's counsel, on this point, cited the cases of *United States v. Mathias,* 36 Fed. Rep., 892, and *The Fitzwalter Peerage* case, 10 Cl. & Fin., 193.    In both of these cases the question arose whether an expert witness should be permitted to testify as to signatures.    In the federal case he was ruled out on the grounds that he had assisted in examining into and collecting the facts of the case; that he had hunted up testimony and had busied himself in the inception and prosecution of the case.    In the English case the expert was not allowed to testify on the ground that he was an expert and was not familiar with the handwriting which he undertook to prove, but had studied the handwriting for the purpose of speaking to the identity of the writer.    The court said "that they ought not to allow a "person to say from inspection of the signatures to two or three "documents—two only, the deed and will, being genuine instru- "ments, admitted to be in the handwriting of Edmund Fow- "ler,—from the inspection of those two documents, that he could "prove the handwriting of the party."

The latter case has no reference whatever to the point under consideration.    The federal case may be good law as regards

the admissibility of expert evidence under the circumstances mentioned, but cannot be regarded as authoritative upon the question of allowing a person to act as interpreter, who has had like acquaintance with the case. This court having confidence in its interpreter did not consider the objection to be important, and is still of the same opinion.

All of the other grounds of the motion which relate to matters ruled on during the trial are overruled without further comment.

The third and sixth grounds of the motion are new. As to the third ground, if the defendant was not present in court when his demurrer and motion to quash the indictment were overruled, his counsel was present, and that is sufficient. The sixth ground is overruled as without merit in view of the evidence.

The defendant's motion, therefore, for a new trial, is overruled.